Citation Nr: 1554501 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 13-15 608 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUE

Entitlement to an initial compensable disability rating for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Massachusetts Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J. Smith, Counsel 


INTRODUCTION

The Veteran served on active duty from October 1967 to September 1969.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island.

The Veteran testified before the undersigned at a June 2014 video-conference hearing. The undersigned noted the issue on appeal and engaged in a colloquy with the Veteran toward substantiation of his claim. See Bryant v. Shinseki, 23 Vet. App. 488, 496-97 (2010). A transcript of the hearing is included in the claims file.

The matter was last before the Board in June 2014. The Board remanded the appeal for further development. In accordance with the remand directives, the RO obtained additional records and scheduled a VA examination. There has been substantial compliance with the Board's remand directives. Stegall v. West, 11 Vet. App. 268 (1998); see also Dyment v. West, 13 Vet. App. 141, 147 (1999) (requiring substantial compliance with Board remand directives).

This appeal was processed using the Virtual VA and VBMS paperless claims processing system. Accordingly, any future review of this appellant's case must consider the existence of the electronic record.


FINDINGS OF FACT

1. On VA audiological testing in September 2012, the Veteran's hearing acuity was Level I bilaterally.

2. On VA audiological testing in July 2014, the Veteran's hearing acuity was Level I bilaterally.

3. On VA audiological testing in May 2015, the Veteran's hearing acuity was Level II bilaterally.


CONCLUSION OF LAW

The criteria for an initial compensable rating for bilateral hearing loss have not been met. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.10, 4.85, 4.86, Diagnostic Code 6100 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Notice and Assistance

VA has satisfied its duties under The Veteran's Claims Assistance Act of 2000 (VCAA) to notify and assist. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2015). In initial rating cases, where service connection has been granted and an initial disability rating and effective date assigned, VCAA notice under 38 U.S.C.A. § 5103(a) is no longer required because the purpose of the notice was fulfilled by the grant of service connection. Dingess/Hartman, 19 Vet. App. at 490; Dunlap v. Nicholson, 21 Vet. App. 112 (2007). In this respect, a May 2012 letter notified the Veteran of all five elements of service connection, and informed him of his and VA's respective responsibilities for obtaining evidence in support of his claim. VA's duty to notify is satisfied. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Dingess/Hartman, 19 Vet. App. at 484; Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002).

VA's duty to assist under the VCAA includes helping claimants to obtain service treatment records (STRs) and other pertinent records, including private medical records (PMRs). See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The claims file contains the Veteran's STRs, PMRs, and VA medical records (VAMRs). In response to the Board's June 2014 remand directive to inquire as to any outstanding records, in May 2015 the Veteran indicated there are no records left to obtain. VBMS Entry May 21, 2015. The duty to obtain relevant records is satisfied. See 38 C.F.R. § 3.159(c).

VA's duty to assist also includes providing a medical examination and/or obtaining a medical opinion when necessary to make a decision on the claim, as defined by law. 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a) (2015); McLendon v. Nicholson, 20 Vet. App. 79 (2006). Appropriate VA medical inquiries have been accomplished as to the claim, and are factually informed, medically competent and responsive to the issue under consideration. Monzingo v Shinseki, 26 Vet. App. 97 (2012); Barr v. Nicholson, 21 Vet. App. 303 (2007). The VA examiners fully described the functional effects caused by the Veteran's hearing loss, including the Veteran's difficulty in hearing his friends and his wife, difficulty hearing the television and the phone, and difficulty hearing in groups and at restaurants. See Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007). 

The record also contains a private audiogram containing both graphical and numerical information concerning the Veteran's hearing loss. The Board may interpret graphical representations of audiometric data and convert it to numerical data in its role as a fact finder as long as the graphical representations are clear. See Ponder v. Shinseki, No. 09-0881, 2010 WL 4241571, at *2 (Vet. App. Oct. 28, 2010) (unpublished single-judge disposition) (noting that in Kelly v. Brown, 7 Vet. App. 471 (1995), the Court determined that it could not interpret the results of an audiograph because interpretation required a factual finding, which was not the role of the Court in the first instance; the Board, however, was empowered to make factual findings in the first instance); see also Bethea v. Derwinski, 2 Vet. App. 252, 254 (1992) (a non-precedential decision may be cited for any persuasiveness or reasoning it contains). 

VA has satisfied its duties to notify and assist and the Board may proceed with appellate review.

Analysis

Disability evaluations are determined by application of the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment. 38 C.F.R. § 4.10. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Separate ratings may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be staged. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). As described below, the preponderance of the evidence is against the assignment of a staged rating for the Veteran's bilateral hearing loss.

Under the applicable criteria, disability ratings are determined by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are performed. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Hearing loss disability evaluations range from 0 percent to 100 percent based on organic impairment of hearing acuity, as measured by controlled speech discrimination tests in conjunction with the average hearing threshold, as measured by puretone audiometric tests in the frequencies 1000, 2000, 3000 and 4000 Hertz.

The rating schedule establishes 11 auditory acuity levels designated from Level I for essentially normal hearing acuity, through Level XI for profound deafness. VA audiometric examinations are conducted using a controlled speech discrimination test together with the results of a puretone audiometry test. 

The vertical lines in Table VI represent nine categories of the percentage of discrimination based on the controlled speech discrimination test. See 38 C.F.R. 
§ 4.85. The horizontal columns in Table VI represent nine categories of decibel loss based on the pure tone audiometry test. The numeric designation of impaired hearing (Levels I through XI) is determined for each ear by intersecting the vertical row appropriate for the percentage of discrimination and the horizontal column appropriate to the puretone decibel loss. The percentage evaluation is found from Table VII by intersecting the vertical column appropriate for the numeric designation for the ear having the better hearing acuity and the horizontal row appropriate to the numeric designation level for the ear having the poorer hearing acuity. 38 C.F.R. § 4.85.

Exceptional patterns of hearing impairment are addressed in 38 C.F.R. § 4.86, although this regulation is not applicable here. 

In June 2012, the Veteran submitted a private audiological evaluation that appears to have been conducted in July 2009. However, the report indicates that the Maryland CNC test was not used. Thus, the report cannot be used in evaluating the Veteran's hearing impairment. 38 C.F.R. § 4.85. Even if it could, the pure tone threshold average was 48.75 decibels (dB) in the right ear and 45 dB in the left ear. Applying the method for evaluating hearing loss via Table VIA to the results of the Veteran's audiological evaluation reveals Level III hearing in the right ear and Level II hearing in the left ear. Combining these according to Table VII reveals a noncompensable rating. 38 C.F.R. § 4.85, Diagnostic Code 6100.

In September 2012, the following pure tone thresholds, in decibels, were obtained:
 

HERTZ




1000
2000
3000
4000
RIGHT
30
45
55
65
LEFT
25
40
55
65

The pure tone threshold average was 48.75 decibels (dB) in the right ear and 46.25 dB in the left ear. Speech discrimination scores were 96 percent in the right ear and 94 percent in the left ear. Applying the method for evaluating hearing loss to the results of the Veteran's audiological evaluation reveals Level I hearing in the right ear and Level II hearing in the left ear. Combining these according to Table VII reveals a noncompensable rating. 38 C.F.R. § 4.85, Diagnostic Code 6100.

In June 2014, the Veteran testified that his greatest difficulties are not with his ability to hear in a quiet room or in a one-on-one interaction with another person, but with his ability to hear when multiple conversations are taking place, when people are speaking to him from a distance, and in generally noisy situations such as in a restaurant. Virtual VA Entry July 18, 2014.

In July 2014 the following pure tone thresholds, in decibels, were obtained (VBMS Entry April 29, 2015, p. 13/54):
 

HERTZ




1000
2000
3000
4000
RIGHT
30
45
55
65
LEFT
25
40
55
65

The pure tone threshold average was 48.75 decibels (dB) in the right ear and 46.25 dB in the left ear. The initial speech recognition score was 92 percent bilaterally. Applying the method for evaluating hearing loss to the results of the Veteran's audiological evaluation reveals Level I hearing bilaterally. Combining these according to Table VII reveals a noncompensable rating. 38 C.F.R. § 4.85, Diagnostic Code 6100.

In May 2015 the following pure tone thresholds, in decibels, were obtained:
 

HERTZ




1000
2000
3000
4000
RIGHT
35
45
60
65
LEFT
35
40
55
70

The pure tone threshold average was 51.25 decibels (dB) in the right ear and 50 dB in the left ear. Speech discrimination scores were 90 percent in the right ear, and 88 percent in the left ear. Applying the method for evaluating hearing loss to the results of the Veteran's audiological evaluation reveals Level II hearing bilaterally. Combining these according to Table VII reveals a noncompensable rating. 38 C.F.R. § 4.85, Diagnostic Code 6100.

In addition to the audiological measurements, the Board has considered the Veteran's lay statements, however, the medical findings directly address the criteria under which the Veteran's hearing loss disability is evaluated. Ratings for hearing loss disability involve a mechanical application of the rating schedule to the numeric designations assigned based on audiometric test results. Lendenmann, 3 Vet. App. at 345. The Board is bound by the applicable law and regulations to mechanically apply the rating schedule to the numeric designations from audiometric test results without regard to the information provided by the Veteran in his statements. 38 U.S.C.A. § 7104(c) (West 2014); 38 C.F.R. § 20.101(a) (2015).

The preponderance of the evidence is against the assignment of a compensable schedular evaluation for the Veteran's bilateral hearing loss disability at any time during the appeal period, based on the audiometric data of record. The Board finds that no higher evaluation can be assigned pursuant to any other Diagnostic Code. Because there are specific Diagnostic Codes to evaluate hearing loss, consideration of other codes for evaluating the disability is not appropriate. 

The Board has considered whether the Veteran's bilateral hearing loss presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of extraschedular ratings is warranted. See 38 C.F.R. § 3.321(b)(1) (2015); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). 

There are no exceptional or unusual factors with regard to the Veteran's bilateral hearing loss. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluation for that service-connected disability is inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating schedule will apply unless there are "exceptional or unusual" factors which render application of the schedule impractical.") Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology, as they address various symptoms and their effect on functioning, and provide for consideration of greater disability and symptoms than currently shown by the evidence. Thus, his disability picture is contemplated by the rating schedule, and the assigned schedular evaluation is, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). Referral for extraschedular consideration is not warranted.

Additionally, a claim for a total disability rating based on individual unemployability has been raised pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009) has not been raised, as the record indicates the Veteran is working. See September 2012 VA examination report, October 2013 VA treatment record (VBMS Entry April 29, 2015, p. 23/54.) While the VA examiners addressed the functional effects of the Veteran's bilateral hearing loss, he has not alleged, and the evidence does not indicate, that he is unable to secure or follow a substantially gainful occupation due to his hearing loss. 

While the Board has considered the applicability of the benefit of the doubt doctrine, as the preponderance of the evidence is against the Veteran's claim, entitlement to a compensable rating must be denied. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

An initial compensable evaluation for bilateral hearing loss is denied.



____________________________________________
VITO A. CLEMENTI
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs